**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**D.F., a minor, by his parents and**          **NO. 1:10-CV-1558**
**natural guardians, SCOTT and**
**SHERRY FAHS**                                **CHIEF JUDGE KANE**

                                               **MAGISTRATE JUDGE METHVIN**

**v.**

**RED LION AREA SCHOOL**
**DISTRICT**

**REPORT AND RECOMMENDATION ON**
**CROSS MOTIONS FOR JUDGMENT ON THE**
**ADMINISTRATIVE RECORD**
*(Docs. 19, 23)*

          This action is brought by parents on behalf of their minor son, D.F., against

the school district under, *inter alia*, the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. §1400, *et seq*. Plaintiffs appeal from a Pennsylvania Hearing

Officer's determination upholding the selection of the non-academic component of

D.F.'s Individualized Education Program ("IEP") for his extended school year

("ESY") program in the summer of 2010.

          D.F. suffers from both blindness and deafness. Observing that he would

benefit from social interaction with his peers, his education team determined that

an ESY program during the summer of 2010 would be educationally beneficial.

The IEP team determined that a combination of school instruction and summer

camp would best suit D.F.. The school district recommended the Easter Seals

2

camp, but Plaintiffs wanted him to attend another camp where he had previously been a camper, and where non-disabled peers might also be attending. Plaintiffs filed a due process complaint against the school district. A hearing officer upheld the district's IEP, including the ESY 2010. The present action followed.

Before the court are cross-motions for judgment on the administrative record.[1] The motions have been referred to the undersigned for a report and recommendation, and are now ripe for disposition.[2] For the following reasons, it is recommended that the court affirm the findings of the administrative hearing officer, and that plaintiffs' motion be denied and defendant's motion be granted.

## ISSUES PRESENTED

The following issues are raised by the present motions:

1.  Have plaintiffs established that the Hearing Officer erred in concluding that D.F. received a "free appropriate public education" (FAPE)[3] for ESY 2010?

---

[1]  Defendant filed a motion for judgment on the administrative record (Doc. 19) on March 30, 2011, along with a supporting brief (Doc. 20) and a statement of material facts (Doc. 21). Plaintiffs filed a cross-motion for judgment on the administrative record (Doc. 23) along with a supporting brief (Doc. 24) on April 5, 2011. Plaintiffs thereafter filed a brief in opposition to defendant's motion on April 14, 2011 (Doc. 25), to which defendant filed a reply on April 28, 2011 (Doc. 27). Additionally, defendant filed a brief in opposition to plaintiffs' motion on April 19, 2011. (Doc. 26).

[2]  On May 2, 2011, Judge Kane referred the pending motions undersigned. (Doc. 28).

[3]  Section 504 of the Rehabilitation Act of 1973 requires school districts to provide a "free appropriate public education" (FAPE) to each qualified person with a disability who is in

3

2.      Did defendant violate plaintiffs' rights by failing to give them notice and allowing them to participate in D.F.'s program and placement for ESY 2010?

3.      Was defendant obligated to provide D.F. with an inclusive ESY program?

4.      Is D.F. entitled to a compensatory education?

5.      Are the claims brought under the ADA and Section 504 of the Rehabilitation Act barred by plaintiffs' failure to exhaust administrative remedies?

## FINDINGS AND CONCLUSIONS

### I. Background[4]

As noted above, D.F. suffers physical impairments including both blindness and deafness. Prior to entering seventh grade in the 2010-2011 school year, D.F.'s teachers and school advocates believed he would benefit from an ESY program during the summer of 2010. In March, 2010, his IEP team and his parents met. The

———————————————

the school district's jurisdiction, regardless of the nature or severity of the person's disability.

[4]  Defendant submitted a Statement of Material Facts with its Motion. Plaintiffs have not submitted a Statement of Material Facts with their Motion, nor have they addressed defendant's Statement of Material Facts. Although defendant urges the court to deem its Statement of Material Facts as unopposed and admitted under LR 56.1, the court will decline to do so. Inasmuch as the present motions seek judgment on the administrative record, not summary judgment, LR 56.1 governing the submissions of Statements of Material Facts is inapplicable. Consequently, Statements of Material Facts are not necessary to the instant Motions.

4

district subsequently sent plaintiffs a Notice of Recommended Educational Placement /Prior Written Notice ("NOREP/PRN"), which they approved, signed, and returned with a notation.[5]

In June, 2010, upon learning that the Easter Seals camp had been selected for plaintiff's non-academic ESY program, Plaintiffs objected; they had wanted D.F. to attend Windsor camp, which he had previously attended, and which they felt would offer D.F. more social interaction with non-disabled peers, including previous classmates. The Easter Seals camp, in plaintiffs' estimation, failed to offer social interaction with non-disabled peers or classmates.

On June 21, 2010, plaintiffs filed a due process complaint. A hearing officer ("HO") conducted a hearing on July 6, 2010. On July 21, 2010, the HO issued her decision, finding that the 2010 ESY program, with placement in the Easter Seals camp, was not inappropriate. The present action followed.

_____

[5] Plaintiffs added a notation to their written approval as quoted and discussed, *infra* at pp. 7-8. *See* Doc. 21-2, at 29-31, Ex.11.

5

## II. Standard of Review

A court's review of an administrative law judge's decision in an IDEA case is subject to a unique standard of review. IDEA itself states that the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C.A. § 1415(i)(2)(C) (West 2010).

The United States Supreme Court has interpreted this language to require a district court to accord "due weight" to the administrative proceedings, being careful to avoid substituting its "own notions of sound educational policy for those of the school authorities [that] they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). To give "due weight" means to conduct a "modified *de novo* review," under which factual findings from the administrative proceedings "are to be considered prima facie correct." *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003) (quoting *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 758 (3d Cir. 1995); *MM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 530–31 (4th Cir. 2002); citing *Murray v. Montrose County Sch. Dist.*, 51 F.3d 921, 927 (10th Cir. 1995)). *Accord Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001).

6

A court may diverge from the facts found below, but must explain any divergence. *Id.* (quoting *MM*, 303 F.3d at 531.) Any findings below based on credibility judgments require deference from the court "unless the nontestimonial, extrinsic evidence in the record" or "the record read in its entirety" would "compel" a contrary conclusion. *Id.* (quoting *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 527 (3d Cir. 1995)). But when a district court hears additional evidence under § 1415(i)(2)(C)(ii), the court is "free to accept or reject the agency findings depending on whether those findings are supported by the new, expanded record and whether they are consistent with the requirements of the Act." *Id.* (quoting *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1220 (3d Cir. 1993)). The court's review of conclusions of law is plenary, requiring no deference to the administrative law judge's legal holdings. *Warren G. v. Cumberland County Sch. Dist.*, 190 F.3d 80, 83 (3d Cir. 1999) (citing *Scott P.*, 62 F.3d at 526).

The burden of persuasion in IEP cases is "where it usually falls, upon the party seeking relief." *Schaffer v. Weast*, 546 U.S. 49, 57–58 (2005). The Supreme Court noted that "IDEA relies heavily upon the expertise of school districts to meet its goals," and that the "stay-put provision" of IDEA requires a child to "remain in his or her 'then-current educational placement' during the pendency of an IDEA hearing." *Id.* at 59 (quoting 20 U.S.C.A. § 1415(j)). Because Congress

apparently presumed that "if the Act's procedural requirements are respected, parents will prevail when they have legitimate grievances," it would be inconsistent with IDEA "to assume that every IEP is invalid until the school district demonstrates that it is not." *Id.* at 59–60.

## III. Discussion

### (A) The Hearing Officer's Decision

In order to prevail in this action, it is incumbent upon plaintiffs to prove, by a preponderance of the evidence, that the IEP for ESY 2010 for D.F. was not appropriate. A review of the HO's findings is therefore required.

Following the hearing on July 6, 2010, the HO made the following findings and determinations: Plaintiffs met with his IEP team on March 8, 2010 to discuss ESY 2010. (Doc. 21-1, at 75, Ex. 6, p. 3, ¶ 2). During this meeting, three different camps were discussed: Easter Seals, Windsor and YMCA. (Id. at ¶5).Plaintiffs indicated their desire that D.F. have a non-disabled peer attend the camp with him, which the District agreed to arrange. (Id. at ¶¶ 7-8). A NOREP/PRN was forwarded to plaintiffs, which they signed and returned with an "X" in the box next to the section "I approve this action/recommendation." Plaintiffs added a notation, however, which stated:

8

> We continue to believe the 8/31/09 IEP is the operative IEP and that includes during ESY. We agree that [D.F.] is eligible for ESY and to the number of hours and days proposed. We do not agree that ESY is to review the curriculum presented in 6th grade. We believe his ESY should focus on the preparing him (sic) for the seventh grade curriculum so that he can meet the standards of the state applicable to all children.

(Id. at ¶ 9). Email communications in June, 2010, led plaintiffs to conclude that the District was not going to implement the ESY program that had expected (Id. at ¶11). By correspondence dated June 11, 2010, plaintiffs advised the district that D.F. should have the following ESY:

| | | |
|---|---|---|
| 3 weeks: | 3 days: half-days of academics, 1 full day at camp | |
| 2 weeks: | 4 full days - 3 days with ½ academics and ½ day at camp, and 1 full day at camp | |
| 1 week: | 4 full days - 3 days with ½ day academics and ½ day at new school . . .[6] | |

(Id. at ¶ 12). Although plaintiffs also requested that D.F. attend the Windsor camp he had previously attended, Windsor did not provide peers of the same age or grade as D.F. (Id. at 13).[7]

---

[6] Plaintiffs' proposal differed both from the District's plan as well as D.F.'s ESY 2009 program, which called for one full day at camp per week, by the addition of 3 half days at camp for a 2 week period.

[7] Testimony offered before the HO indicated that the day camp D.F. had previously attended at Windsor was for children 6–12. (Doc. 21-1, Ex. 2, p. 58).

9

Based on these findings, the HO concluded that a change in location for services or a schedule change to accommodate additional time at camp was not necessary for purposes of FAPE analysis. Indeed, she found that plaintiffs had presented no evidence on these issues and had thus failed to meet their burden to support the inappropriateness of such changes. Moreover, the HO observed that the least restrictive environment ("LRE") considerations for an ESY is unclear. (Id. at p. 12). Given the District's lack of summer programming, coupled with recent decision in *Travis G. v. New Hope Solebury Sch. Dist.*, 544 F. Supp. 2d 435 (E.D. Pa. 2008),[8] the HO concluded that the District's selection of the Easter Seals camp, which D.F. would attend accompanied by one of his peer buddies, was appropriate for purposes of the IDEA. Plaintiffs challenge this determination in the present matter.

### (B) Did D.F.'s IEP for ESY 2010 comply with the IDEA?

The central inquiry for resolution herein is whether plaintiffs have shown that D.F. did not received a FAPE in the LRE. Plaintiffs raise issues concerning both parental participation and the inclusiveness of the program.

---

[8] *Travis G.*, which upheld the school district's offer of an ESY that did not include non-disabled peers, called into doubt whether LRE considerations must be applied to ESY programs in instances where a school district does not offer summer programs.

10

### (1)   Parents' notice and participation

Plaintiffs first challenge their participation in D.F.'s ESY 2010 program. As noted above, plaintiffs met with D.F.'s IEP team and discussed three summer camps; the District sent a NOREP/PRN which plaintiffs signed and returned. (Id. at ¶ 9). In June, 2010, emails between plaintiffs and the District indicated that they believed the District was not going to be implementing the ESY program that had expected or believed was to be implemented. (Id. at ¶ 11). Instead of the Easter Seals camp, plaintiffs advocated for the Windsor camp, with additional camp time included in D.F.'s program.

Defendant asserts that plaintiffs have waived the issue of parental participation by not raising it at the administrative level, and that in any case, plaintiffs did have adequate participation in the process.

The record shows that while the District did not fully adopt plaintiffs' preferences regarding the 2010 ESY, plaintiffs were involved in extensive discussions on the subject. Further, as defendant points out, any uncertainty as to what camp would to be chosen does not constitute a change of placement that required further involvement of D.F.'s  IEP team. A "change in educational placement" occurs when there is a significant impact on the substance of a child's learning experience. *George A. v. Wallingford Swarthmore School Dist.*, 655

F.Supp.2d 546, 551 (E.D. Pa. 2009); *In re: Educ. Assignment of Joseph R.*, 318 F.

App'x. 113, 119 (3d Cir.2009); *DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747

F.2d 149, 153 (3d Cir.1984). A school district may make changes in the physical

location of a child's program if it does not significantly affect the student's

program, and it may exercise discretion over how and where a student's IEP is

implemented. *R.B. ex rel. Parent v. Mastery Charter School*, 762 F.Supp.2d 745,

760 (E.D. Pa. 2010). In the present matter, the designation of which camp D.F.

was to attend falls within the defendant's discretion over where the non-academic

portion of the IEP was implemented.

Accordingly, plaintiffs have failed to establish that they were not involved

in his ESY 2010 or that D.F.'s rights were violated by any a decision to select the

Easter Seals camp. Although plaintiffs disagreed with the selection of the Easter

Seals camp for the non-academic aspect of D.F.'s ESY 2010, there was an

agreement as to the ESY, and plaintiffs participated in that process. Consequently,

the HO's finding that no violation of the IDEA occurred on this ground is

appropriate.[9]

---

[9] Additionally, the HO found that the District acquiesced to plaintiffs' camp selection
request and offered to send D.F. to the Windsor camp, provide transportation and offer an
additional day per week at camp. (Doc. 21-1, Ex. 6, P. 6, ¶ 21).

12

*(2)     Was defendant required to provide an inclusive ESY?*

The IDEA "require[s] that a disabled child be placed in the least restrictive environment . . . that will provide him with a meaningful educational benefit." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 390 (3d Cir. 2006) (quoting *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 578 (3d Cir. 2000)). This "mainstreaming component" of IDEA mandates that disabled children be educated along with children who are not disabled to the greatest extent possible. *Id.* (quoting *Scott P.*, *supra* at 535). To determine whether this mandate has been satisfied, a court considers "(1) the steps the school district has taken to accommodate the child in a regular classroom; (2) the child's ability to receive an educational benefit from regular education; and (3) the effect the disabled child's presence has on the regular classroom." *Id.* (quoting *Kingwood Twp.*, 205 F.3d at 579). As summarized in the *L.E.* opinion:

> [A] court determines, through a comparison of educational opportunities supported by expert testimony, whether the child can be satisfactorily educated in a regular classroom with supplemental services. If it finds that the child cannot be satisfactorily educated in that manner, the court must consider whether the school attempted to mainstream the child to the maximum extent possible.

*Id.* at 391. Although the Third Circuit had "always placed the burden of demonstrating compliance with the IDEA on the school district," the Supreme

Court's decision in *Schaffer* placed the burden "upon the party seeking relief"—here, J.F. and his parents. *Id.* (citing *Kingwood Twp.*, 205 F.3d at 579; *Oberti*, 995 F.2d at 1219; *Schaffer,* 546 U.S. at 62).

Plaintiffs maintain that the defendant failed to provide ESY 2010 in the LRE. Defendant contends, however, that the there is a lack of clear authority as to whether the LRE requirement applies to ESY programs. The HO observed that the uncontroverted testimony established that "the District did not provide any academic summer programming to students without disabilities so there is no regular classroom to educate the Student with the use of supplementary aids and services nor is there an option for mainstreaming to the maximum possible." (Doc. 21-1, Ex. 6, p. 13).

Moreover, the issue of whether an ESY program must include LRE considerations is unclear in the Third Circuit. As noted above, the recent decision in *Travis G.* suggests that a school district without summer programs for non-disabled students may not be obligated to address LRE considerations in placement of students in ESY programs. The *Travis G.* decision upheld a school district's ESY program that did not include non-disabled peers. Here, the District offered to have D.F.'s non-disabled peers accompany him to camp. It therefore

appears more inclusive than the ESY the *Travis G.* court deemed appropriate under the IDEA.

The changes that plaintiffs desired for him —additional days at a camp for non-disabled children—may well have conferred an additional educational and emotional benefit to him. However, a school district is not obligated to provide a student with every conceivable accommodation for his or her disability. *See Rowley*, 458 U.S. at 199 (finding that a FAPE does not require "the furnishing of every special service necessary to maximize each handicapped child's potential"). The District is obligated to provide D.F. with an education specially designed to meet his unique needs such that he may benefit from it. *S.H.*, 336 F.3d at 271; *see also Rowley*, 458 U.S. at 189 ("[W]hatever Congress meant by an 'appropriate' education, it is clear that it did not mean a potential-maximizing education."); *Hartmann v. Loudoun County Bd. of Ed.*, 118 F.3d 996, 1001 (4th Cir.1997) ("States must ... confer some educational benefit upon the handicapped child, but the Act does not require the furnishing of every special service necessary to maximize each handicapped child's potential") (internal citations omitted); *Travis G,*, 544 F.Supp.2d at 441 ("Generally speaking, a school district is required to show only that the proposed IEP would provide a meaningful education benefit

and not that it would be the best possible education."). The District met this obligation.

In developing the ESY 2010, the District evaluated D.F. and reviewed information from many sources. D.F.'s IEP team met with his parents to discuss the ESY 2010 program. Three different camps were considered for the non-academic component of his ESY 2010. Of these, Windsor was not chosen given the lack of age-appropriate peers attending as well as the camp's regular use of video programs to campers in the afternoon, which would neither hold D.F.'s interest nor promote his social interaction. (Doc. 21-1, Ex. 6, p. 5, ¶ 14). Windsor camp staff, additionally, was not equipped to provide plaintiff with services necessary to promote his inclusion and interaction. (Id.). The YMCA was not selected based on the lack of other district students attending. (Id. at ¶ 15).

Plaintiffs have offered little to support their contention that the Easter Seals camp was not appropriate because it would not promote D.F.'s social interaction with non-disabled peers. D.F.'s IEP required a "socialization appropriate camp" so he would have interaction with others and could practice his social skills. The District offered to arrange for D.F.'s non-disabled peers to attend the camp with

him.[10] Moreover, the increased camp time, including the addition of 3 half-days at camp for 2 weeks, was not part of plaintiff's ESY 2009 which they had sought to continue.

Based on the foregoing analysis, plaintiffs have failed to establish that the ESY 2010, specifically the non-academic component of camp offered by the District, was not appropriate for purposes of the IDEA because it lacked LRE considerations.

### (3)   *Compensatory Education*

Under the IDEA, a disabled student is entitled to a FAPE until age 21. *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 272 (3d Cir.2007) (citing 20 U.S.C. § 1412(a)(1)(A)). "An award of compensatory education allows a disabled student to continue beyond age twenty-one in order to make up for the earlier deprivation of [a FAPE]." *Ridgewood Bd. of Educ. v. N.E ex rel. M.E.*, 172 F.3d 238, 249 (3d Cir.1999). "The right to compensatory education accrues when the school knows or should know that the student is receiving an inappropriate education." *Id.* at 250. An inappropriate education under the IDEA is a program

---

[10] Presumably, the inclusion of a peer buddy would have the effect of promoting his social interaction skills.

which is does not provide "significant learning" and confer a "meaningful benefit." *Id* at 247.

In this case, it has been concluded that D.F. was not denied a FAPE. A grant of compensatory education is not appropriate and plaintiff's request for compensatory education should be denied.

### (C)    Exhaustion of administrative remedies

Finally, defendant contends that plaintiffs' claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act are barred because plaintiffs failed to exhaust these claims administratively. Before a plaintiff can bring a claim in federal court for an IDEA violation, he must exhaust his administrative remedies, including, in Pennsylvania, a local due process hearing and an appeal to the state educational agency. 20 U.S.C. § 1415(f). Any party dissatisfied with the state administrative hearing may bring a civil action in state or federal court, in which the court must conduct an independent review based on the preponderance of the evidence, while giving "due weight" to the state administrative findings. *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir.1988) (citing *Rowley*, 458 U.S. at 206-07).

The IDEA'S exhaustion requirement applies to all claims for relief available under the IDEA, even if a claim arises under a different cause of action. *Jeremy H.*

*v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir.1996). Therefore,

exhaustion of the IDEA's administrative remedies is required not only for actions

brought under the IDEA, but also for other actions brought "seeking relief that is

also available under [the IDEA]." 20 U.S.C. § 1415(l). More specifically:

> Nothing in this title ... shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, ... or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part.*

20 U.S.C. § 1415(l) (emphasis added). Based on this language, courts have

repeatedly held that, to the extent that any claim seeks relief that is available under

the IDEA, the IDEA's administrative remedies must be exhausted before such an

action is brought. *R.R. v. Manhiem Township Sch. Dist.*, 412 F. App'x. 544, 548

(3d Cir. 2011) (quoting *L.R. v. Manheim Township Sch. Dist.*, 540 F.Supp.2d 603,

611 (E.D. Pa.2008)); *Hesling v. Avon Grove Sch. Dist.* ( *"Hesling II"* ), 2010 WL

2649909 (E.D. Pa. June 30, 2010) (finding exhaustion of administrative remedies

required for ADA and Section 504 claims where those claims are premised on "the

same allegedly retaliatory acts as their IDEA claim" and the relief is "available

under the IDEA"); *R.T. v. Southeastern York County Sch. Dist.*, 2007 WL 587221 (M.D. Pa. Feb. 20, 2007) (Rambo, J.) (stating that in the Third Circuit, "the exhaustion requirement is a prerequisite for a District Court to have subject matter jurisdiction over a claim under the IDEA, or any claim that seeks relief similar to that available under the IDEA); *see also Brandon V. v. Chichester Sch. Dist.*, 2007 WL 2155722 (E.D. Pa. July 25, 2007) (finding exhaustion of administrative remedies required for Section 504 claim to the extent the claim seeks relief that is also available under IDEA); *M.M. v. Tredyffrin/Easttown Sch. Dist.,* 2006 WL 2561242 (E.D. Pa. Sept. 1, 2006) (same).

Thus, the central issue this court must resolve is whether the relief sought under plaintiffs' ADA and Section 504 claims is also available under the IDEA. In their complaint, plaintiffs seek the following remedies: (1) declaratory relief finding that plaintiff's 2010 ESY program did not constitute FAPE in the LRE; (2) compensatory education (for the 2010 ESY); (3) attorneys fees; and (4) such additional relief as the court deems necessary and appropriate. (Doc. 1). These types of relief sought are available under the IDEA. The IDEA empowers district courts with considerable discretion when fashioning a remedy. *See* 20 U.S.C. 1415(i)(2)(C)(iii) (the court "shall grant such relief as the court determines appropriate."). The case law is clear that various forms of equitable relief,

including the issuance of a declaratory judgment, can be obtained through the IDEA's administrative proceedings. *Hesling II,* at *1-2;  *Hesling v. Avon Grove Sch. Dist. ("Hesling I")*, 428 F.Supp.2d 262, 273 (E.D. Pa. 2006). Likewise, the other relief sought by plaintiffs is also available through the IDEA's administrative procedures.

Because plaintiffs' ADA and Section 504 claims are derivative of their IDEA claim, and the requested relief is available under the IDEA, plaintiffs' ADA and Section 504 claims must be addressed in the first instance by the IDEA administrative process. Because the ADA and Section 504 claims were not at issue during the due process hearing, plaintiffs have failed to exhaust their administrative remedies and they have not shown that exhaustion should be excused. Accordingly, it is recommended that judgment in favor of defendant be entered on such claims.

**IV. Recommendation**

Based on the foregoing, it is respectfully recommended that the defendant's motion for judgment on the administrative record (Doc. 19) be granted and that

21

plaintiff's motion for judgment on the administrative record (Doc. 23) be denied.


Signed on September 26, 2011

_____

MILDRED E. METHVIN
U. S. MAGISTRATE JUDGE