IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| D.F. a minor, by his parents and natural guardians SCOTT AND SHERRY FAHS, | : : : | |
| Plaintiffs | : : | Civil Action No. 1:10-cv-1558 |
| v. | : : | (Chief Judge Kane) |
| RED LION AREA SCHOOL DISTRICT, Defendant | : : : | |

**MEMORANDUM**

The instant matter arises from a dispute regarding Plaintiff D.F.'s extended school year educational placement.  Plaintiffs filed an appeal from a Pennsylvania Hearing Officer's determination regarding the extended school year placement, alleging that the placement violated D.F.'s rights under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400, et seq. (Doc. No. 1.)  Defendants filed a motion for judgment on the administrative record on March 30, 2011. (Doc. No. 19.)  Plaintiffs filed their own motion for judgment on the administrative record on April 5, 2011. (Doc. No. 23.)  The Court referred the matter to Magistrate Judge Mildred E. Methvin for consideration. (Doc. No. 28.)  Magistrate Judge Methvin entered a Report and Recommendation on September 26, 2011, recommending that Defendants' motion for judgment on the administrative record be granted and that Plaintiffs' motion for judgment on the administrative record be denied. (Doc. No. 29.)  Plaintiffs filed objections to the Report and Recommendation (Doc. No. 30), which have now been fully briefed.  For the reasons stated more fully herein, the Court will adopt the Report and Recommendation and grant Defendant's motion for judgment on the administrative record.

**I.      BACKGROUND**[1]

D.F. is a child suffering from physical disabilities including blindness and deafness. His individualized education program ("IEP") team determined that an extended school year program combining both school instruction and summer camp during the summer of 2010 would be beneficial to his education. The IEP team met with D.F.'s parents on March 8, 2010, to determine the appropriate extended school year program for D.F. for the summer of 2010. The district issued a notice of recommended educational placement on March 17, 2010, indicating that "the [local educational authority] proposes to provide D.F. with extended school year services during the summer of 2010." The parents signed the notice of recommended educational placement with the caveat that "[they] continue to believe the 8/31/09 IEP is the operative IEP and that includes during ESY."[2] In June 2010, after learning that the district selected the Easter Seals camp for D.F.'s non-academic extended school year setting, Plaintiffs objected. Plaintiffs filed a due process complaint on June 21, 2010. On July 6, 2010, a hearing was held, and on July 21, 2010, the hearing officer determined that D.F.'s extended school year program was not inappropriate.

**II.     STANDARD OF REVIEW**

In reviewing a motion for judgment on the administrative record, the Third Circuit has

---

[1] The background of this matter is set out in further detail in both the Report and Recommendation (Doc. No. 29) and the hearing officer's decision (Doc. No. 18-2).

[2] Email communications indicate the parents believed the extended school year program should total six weeks including: (1) three weeks of three half days of academics and one full day at camp; (2) two weeks with four full days of three half-academic and half-camp days and one full day at camp; and (3) one week with four full days with three half days of academics and one half day at the new school.

held that district courts conduct a modified de novo review. S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003). In conducting this review, the IDEA requires that the reviewing court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). This standard requires the reviewing court to accord "due weight" to the administrative proceedings, being careful to avoid substituting its "own notions of sound educational policy for those of the school authorities [that] they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982). The court should "defer to the hearing officer's factual findings," unless it can point to contrary non-testimonial extrinsic evidence in the record. Carlisle Area Sch. v. Scott P. by & Through Bess P., 62 F.3d 520, 529 (3d Cir. 1995). The court's review of conclusions of law is plenary, requiring no deference to the state hearing officer's legal determinations. Warren G. v. Cumberland Cnty. Sch. Dist., 190 F.3d 80, 83 (3d Cir. 1999). The burden of proof is on the party seeking relief. L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 391-92 (3d Cir. 2006.). The party seeking to overturn an administrative decision must: (1) overcome the presumption that the hearing officer's findings were correct; and (2) prove that the proposed IEP was inappropriate. Andrew M. v. Del. Cnty. Office of Mental Health and Mental Retardation, 490 F.3d 337, 345 (3d Cir. 2007); see also Schaffer v. Weast, 546 U.S. 49, 62 (2005) ("The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief.").

**III.   DISCUSSION**[3]

Plaintiffs raise five objections to Magistrate Judge Methvin's Report and Recommendation.  Specifically, Plaintiffs maintain that the Report and Recommendation contains the following errors: (1) "the Magistrate Judge misapplied the governing law concerning D.F.'s right to participate with typical peers to the maximum extent appropriate in the summer camp component of his extended year program;" (2) "the Magistrate Judge applied the incorrect legal standards to the issue [of] whether the Easter Seals camp represented the least restrictive environment;" (3) "the Magistrate Judge erred in ignoring the availability of the YMCA camp for typical children as an alternative to the segregated Easter Seals program;"(4) "the Magistrate Judge applied an incorrect legal standard in deciding that the parents were adequately involved in the decision concerning D.F.'s placement for extended school year services;" and (5) the Magistrate Judge erred in concluding that Plaintiffs failed to exhaust their claims under the ADA and Rehabilitation Act. (Doc. No. 30.)  The thrust of the first three objections appears to be identical, that is, that the Easter Seals Camp violated the least restrictive environment requirement.  Accordingly, the Court will consider the first three objections together.  The Court will then consider the remaining objections in turn.

> **A.   Whether Easter Seals Violated the Least Restrictive Environment Requirement**

In the present matter, the hearing officer found, and the record reflects, that three camps

---

[3] Defendant argues Plaintiffs' objections to the Report and Recommendation are untimely.  Plaintiffs submitted their objections on the date the Report and Recommendation's docket entry indicated objections would be due; accordingly, assuming arguendo that the objections are late, the untimeliness of the objections is excusable.  See Fed. R. Civ. P. 6(b); Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380, 388 (1993).

were considered by the district for D.F.'s extended school year placement: (1) Windsor Wonderland, (2) YMCA, and (3) Easter Seals. The district ultimately arranged for D.F. to attend camp at Easter Seals, which is specifically designed for students with disabilities, and agreed to arrange for D.F. to be accompanied to the camp by a regular education peer in D.F.'s "circle of friends."[4] Plaintiffs allege this placement violated the IDEA's least restrictive environment ("LRE") requirement because the district selected a camp for students with disabilities rather than camps organized by Windsor Wonderland or YMCA camps, which were not limited to special needs children. The Report and Recommendation agreed with the state administrative hearing officer that the placement did not violate the LRE requirement; however, Plaintiffs contend that the Report and Recommendation applied the wrong standard in making this determination and that the camps operated by Windsor Wonderland or the YMCA were the proper placement for D.F.'s extended school year program.

The IDEA's LRE requirement mandates that:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A). In short, the LRE requirement creates a presumption in favor of integrating children with disabilities, "to the maximum extent appropriate," into regular

---

[4] The "circle of friends" is a group of regular education students in D.F.'s class who have indicated that they would like to become better friends with D.F. and who have been taught how to interact with him. (Doc. No. 18-3 at 81:19-25, 82:1-12.)

education classes.  See, e.g., Cordero v. Pa. Dep't of Educ., 795 F. Supp. 1352, 1359 (M.D. Pa. 1992).

Of course, while mainstreaming a child, that is, placing him in a regular education classroom, is a goal of the LRE requirement, it cannot be achieved uniformly, and indeed may in certain circumstances actually violate the LRE requirement.  See, e.g., Capistrano Unified Sch. Dist. v. Wartenberg by & Through Wartenberg, 59 F.3d 884, 897 (9th Cir. 1995) (holding that where separate teaching would produce superior results to mainstreaming, mainstreaming is neither appropriate nor satisfactory).  To that end, the Third Circuit has crafted a two-part test to determine whether a school district is complying with the LRE requirement: (1) a court must determine whether education can be satisfactorily achieved in a regular education classroom with the aid of any accommodations; and (2) if it cannot, a court must determine whether the child has been mainstreamed to the maximum extent appropriate in his alternate placement.  A.G. v. Wissahickon Sch. Dist., 374 F. App'x 330, 333 (3d Cir. 2010) (quoting Oberti v. Bd. of Educ., 995 F.2d 1204, 1215 (3d Cir. 1993)).  To answer the first question, courts must consider "(1) the steps the school district has taken to accommodate the child in a regular classroom; (2) the child's ability to receive an educational benefit from regular education; and (3) the effect the disabled child's presence has on the regular classroom."  L.E., 435 F.3d at 389 (quoting T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 579 (3d Cir. 2000)).

Central to Plaintiffs' objection appears to be the hearing officer's, and the Report and Recommendation's, focus on the "appropriateness" of the three potential placements.  This examination of the appropriateness of the placements, combined with references to Travis G. v. New Hope Solebury School District, 544 F. Supp. 2d 435 (E.D. Pa. 2008), in which that district

court questioned whether the LRE requirement applied to ESY placements, appear to have placed Plaintiffs under the misapprehension that the Report and Recommendation and the hearing officer disregarded the LRE requirement when reviewing D.F.'s ESY placement.  While appropriateness is more commonly associated with the requirement that schools provide a free appropriate public education ("FAPE") than the LRE requirement, appropriateness remains central to an analysis of whether the LRE requirement was violated.  The primary consideration a court must make in reviewing a placement is not the restrictiveness of the placement, but rather whether the placement is appropriate, that is whether the student is able to receive a meaningful educational benefit in that placement.  If an integrated placement would not provide the student with a meaningful educational benefit, the placement cannot be the LRE for that student.

In the present matter, no summer academic program was offered to any regular education students in the District.  (Doc. No. 18-2 at 5.)  Accordingly, the District could not educate D.F. in a regular education classroom in the District, and properly sought an outside placement for D.F.  See, e.g., Kingwood, 205 F.3d at 579 (noting that where the school district did not have a regular education pre-school class the district need not create one); Mark A. v. Grant Wood Area Educ. Agency, 795 F.2d 52, 54 (8th Cir. 1986) (holding that districts need not establish new services to satisfy the LRE requirement).  Three outside camps were considered: Windsor Wonderland, YMCA, and Easter Seals.  (Doc. No. 18-2 at 4.)  Windsor Wonderland and the YMCA camps were designed for traditionally developing children, and the Easter Seals Camp was designed to serve children with disabilities.  (Id. at 15.)  The hearing officer determined that Plaintiffs failed to establish that Plaintiffs' preferred placements – Windsor Wonderland or the YMCA Camp – were appropriate to D.F.'s needs and that the Easter Seals camp violated the

IDEA.

Upon a review of the record, the Court agrees that Plaintiffs do not provide a basis for concluding that either Windsor Wonderland or the YMCA Camp were appropriate placements. As was noted by both the hearing officer and the Magistrate Judge, Windsor Wonderland did not provide D.F. with peers who were of the same age or in the same grade as D.F.[5], did not have staff on hand who were equipped to provide services necessary to include D.F. and promote social interaction with his peers, and often showed movies in the afternoon, which is not something in which D.F. is interested and does not promote social interaction. (Doc. No. 18-2 at 4-5.) Regarding the YMCA Camp, the record is devoid of any evidence suggesting that it would be appropriate or confer a meaningful educational benefit. The record indicates that the school was concerned that Red Lion children who attended the camp in the past were uncomfortable and planned not to return, thus eliminating an opportunity for D.F. to interact with peers from his school. (Doc. No. 18-3 at 94:9-21.) There was also a concern that the YMCA Camp, like Windsor Wonderland, could not "differentiat[e] and diversify[] the types of activities that they offer so that students with special needs can participate effectively." (Id. at 95:1-6.) By contrast,

---

[5] The testimony at the hearing established that while the day camp was designed for children age six through twelve, during the year in question, there were only three children who were eleven and no children who were twelve years old enrolled at the camp. (Doc. No. 18-3 at 91:10-14.) Plaintiffs argue that there were options for children D.F.'s age, thirteen, at Windsor Wonderland and provide a brochure as support for this assertion. The brochure, however, confirms that the day camp was designed only for children between six and twelve. (Doc. No. 18-5 at 49-57.) The programs for children older than twelve are limited to week-long programs, most lasting only two or three hours per day, devoted to one specific activity. For example, a "Pop Art!" class was available from June 14-18 from 5 p.m. until 8 p.m. for children twelve to fifteen. (Id. at 50.) A "Junior Golf Camp" was held that same week from 1 p.m. until 3 p.m. for children ten to seventeen. (Id.) Plaintiffs provide the Court with no basis for believing that these short camps would provide D.F. with a meaningful educational benefit or that these camps would be able to serve D.F.'s unique needs.

8

the Easter Seals Camp provided for a greater opportunity to have social interactions with peers in his age group, or slightly older, and it had staff who are familiar with accommodating children with special needs. (Id. at 126-128.) There does not appear to be any dispute that Easter Seals was appropriate to provide a meaningful educational benefit.

In short, there is no evidence of record from which the Court could conclude that the Windsor Wonderland Camp or the YMCA Camp were appropriate educational placements. Nor is there any record that there is some other appropriate less restrictive placement available for D.F.'s summer program. Because there is no evidence that the Windsor Wonderland Camp or the YMCA Camp were appropriate, and because it appears that the Easter Seals Camp was the only appropriate option, the Court must agree that the Easter Seals Camp satisfied both the FAPE and LRE requirements. This finding is in accord with the decision in Travis G. v. New Hope Solebury, in which the district court determined that an extended school year placement in a program for students with special needs did not violate the LRE requirement where the district did not have extended school year programs for regular education students and the parents wanted to place their child in a six-week art camp program for typical students. 544 F. Supp. 2d at 442-43. Indeed, D.F.'s placement at Easter Seals is even less restrictive than the placement in Travis G., because in this matter the District has made provisions for regular education students in D.F.'s circle of friends to attend the camp with him. Accordingly, the Court must deny Plaintiffs' motion for judgment on the administrative record and grant Defendant's motion for judgment on the administrative record on this issue.

    **B.**    **Whether the Magistrate Judge Properly Determined D.F.'s Parents Were Adequately Included in the Placement Determination**

Next, Plaintiffs contend that Magistrate Judge Methvin applied the incorrect legal

standard in determining whether D.F's parents were adequately involved in the extended school year placement determination. This Court need not reach that determination, however, because as Defendants correctly note, this issue was not presented at the due process hearing. The Hearing Officer made clear that the "only" issues presented at the due process hearing were: (1) whether the District's offer of extended school year services complied with the IDEA; and (2) what constituted D.F.'s pendent educational placement. (Doc. No. 18-2 at 2.) Plaintiffs have failed to identify where in the administrative record they raise the issue of the alleged violation of their procedural right to participate in the IEP determination. Because the IDEA requires that a party seeking relief from the decision of a state administrative proceeding exhaust his or her remedies, this Court does not have jurisdiction to consider the issue. See Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 186-87 n.14 (3d Cir. 2009); J. L. v. Mercer Island Sch. Dist., 575 F.3d 1025, 1038 (9th Cir. 2009) (reversing district court and concluding district court did not have subject matter jurisdiction over non-exhausted IDEA claim of procedural violation); Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 655-56 (8th Cir. 1999) (concluding the claim that the child's parents were not adequately involved in the development of the IEP was barred because this claim was not submitted to the state administrative agency along with the substantive IDEA clams). Accordingly, the Court will not disturb the hearing officer's findings on this basis.

> C.  **Whether Plaintiffs Failed to Exhaust Their ADA and Rehabilitation Act Claims**

Finally, Plaintiffs contend that Magistrate Judge Methvin erred in concluding that Plaintiffs' ADA and Rehabilitation Act claims must fail because Plaintiffs failed to exhaust those claims. The IDEA provides that:

> Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this part.

20 U.S.C. § 1415(l). Defendants contend, and Magistrate Judge Methvin agreed, that because Plaintiffs did not raise their ADA or Rehabilitation Act claims at their due process hearing, that those claims are now barred. Plaintiffs counter that they were not required to exhaust their ADA and Rehabilitation Act claims at the IDEA due process hearing because the IDEA claims raised at the due process hearing were nearly identical to the ADA and Rehabilitation Act claims. The Court cannot agree. The statute and case law make clear that "IDEA-related claims brought under the ADA or the Rehabilitation Act [must] be submitted in the first instance to administrative review." R.R. v. Manheim Twp. Sch. Dist., 412 F. App'x 544, 549-50 (3d Cir. 2011); see also Swope v. Cent. York Sch. Dist., No. 1:10-cv-02541, 2011 U.S. Dist. LEXIS 65804, at *19 (M.D. Pa. June 21, 2011) (concluding that because the plaintiff failed to raise his ADA and Rehabilitation Act claims along with his IDEA claim in his due process hearing, that plaintiff's ADA and Rehabilitation Act claims failed for failure to exhaust).[6] Accordingly, Magistrate Judge Methvin did not err in determining that Plaintiffs failed to exhaust their ADA

---

[6] Even if the claims had been exhausted, because Plaintiffs' ADA and Rehabilitation Act claims are based on the denial of FAPE in the LRE for D.F.'s ESY program, these claims would fail for the same reason their IDEA claim failed. See, e.g., D.F. v. Western Sch. Corp., 921 F. Supp. 559, 574 (S.D. Ind. 1996) (concluding that because the LRE requirements in the ADA and Rehabilitation Act mirror the LRE requirement in the IDEA that dismissal of the IDEA claims required dismissal of the ADA and Rehabilitation Act claims and collecting cases).

and Rehabilitation Act claims in this action.[7]

## IV.   CONCLUSION

In the present matter, Plaintiffs shouldered the burden of proof in establishing that D.F.'s extended school year placement violated the IDEA.  Although all parties agreed that the program selected was the least integrated program available, Plaintiffs failed to show that the less restrictive programs available were appropriate to provide D.F. with a meaningful educational benefit.  Because the Windsor Wonderland and YMCA programs were not tailored to meet D.F.'s specific needs, did not have staff trained to adapt programing to allow for D.F.'s inclusion in the activities of the camp, and appear to have limited opportunities for peer interaction, the Court agrees with the hearing officer and the Magistrate Judge that those programs were not appropriate.  Although the Easter Seals Camp was more restrictive, there was no dispute that sending D.F. to Easter Seals with a member of his "circle of friends" would be appropriate; therefore, this setting did not violate the LRE requirement.  The remaining issues were not presented in the administrative hearing, and are therefore not properly before the Court.  Even if those unexhausted claims were before the Court, however, those claims would fail on the merits.  Accordingly, the Court must adopt the Report and Recommendation, grant Defendant's motion for judgment on the administrative record, and deny Plaintiffs' motion for judgment on the administrative record.

---

[7] Plaintiffs do not dispute that their ADA and Rehabilitation Act claims are derivative of their IDEA claim and that the requested relief is available under the IDEA.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **D.F. a minor, by his** : | |
| **parents and natural guardians** : | |
| **SCOTT AND SHERRY FAHS,** : | |
|     Plaintiffs : | Civil Action No. 1:10-cv-1558 |
| : | |
| v. : | (Chief Judge Kane) |
| : | |
| **RED LION AREA** : | |
| **SCHOOL DISTRICT,** : | |
|     Defendant : | |

## ORDER

**AND NOW**, on this 19th day of January 2012, **IT IS HEREBY ORDERED THAT** Magistrate Judge Methvin's Report and Recommendation (Doc. No. 29) is **ADOPTED**, Defendant's motion for judgment on the administrative record (Doc. No. 19) is **GRANTED**, and Plaintiffs' motion for judgment on the administrative record (Doc. No. 23) is **DENIED**. The clerk of court is directed to close the case.

                                          S/ Yvette Kane
                                          Yvette Kane, Chief Judge
                                          United States District Court
                                          Middle District of Pennsylvania